Slip Op. 23-159

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BGH EDELSTAHL SIEGEN GMBH, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Claire R. Kelly, Judge |
| Defendant, | Court No. 21-00080 |
| and | |
| ELLWOOD CITY FORGE COMPANY, ET AL., | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's remand redetermination in the 2018 investigation of the countervailing duty order covering forged steel fluid end blocks from the Federal Republic of Germany.]

Dated: November 14, 2023

Marc E. Montalbine, deKieffer & Horgan, PLLC, of Washington, DC, for plaintiff BGH Edelstahl Siegen GmbH. Also on the brief were Gregory S. Menegaz, Alexandra H. Salzman, and Merisa A. Horgan.

Kelly M. Geddes, Trial Attorney, Sarah E. Kramer, Trial Attorney, and Patricia M. McCarthy, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. Also on the brief was Brian M. Boynton, Principal Deputy Assistant Attorney General. Of counsel on the brief was Ayat Mujais, Attorney, and Joseph Grossman, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Nicole Brunda, Cassidy Levy Kent (USA) LLP, of Washington, DC, for defendant intervenors Ellwood City Forge Co., Ellwood National Steel Co., Ellwood Quality Steels Co., and A. Finkl & Sons.  Also on the brief were Thomas M. Beline, Jack A. Levy, Myles S. Getlan, and Chase J. Dunn.

Kelly, Judge:    Before the Court is the U.S. Department of Commerce's ("Commerce") remand redetermination pursuant to the Court's second remand order, see BGH Edelstahl Siegen GmbH v. United States, 639 F. Supp. 3d 1237 (Ct. Int'l Trade 2023) ("BGH II"), on Commerce's final determination in its countervailing duty ("CVD") investigation of forged steel fluid end blocks ("fluid end blocks") from the Federal Republic of Germany ("FRG").    See Final Results of Redetermination Pursuant to Court Remand, C-428-848 (Aug. 7, 2023), ECF No. 60-1; see generally [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 7,535 (Dep't Commerce Jan. 29, 2021) ([CVD] orders, and am. Final affirmative [CVD] determination for the People's Republic of China) and accompanying Issues and Decision Mem., C-428-848, PD 293, bar code 4062827-01 (Dec. 7, 2020), ECF No. 15-2; [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 10,244 (Dep't Commerce Feb. 19, 2021) (correction to [CVD] orders).    For the following reasons, the Court remands Commerce's redetermination.

## BACKGROUND

The Court presumes familiarity with the facts of this case as set out in its previous opinions ordering remand to Commerce, see BGH Edelstahl Siegen GmbH v. United States, 600 F. Supp. 3d 1241, 1248 (Ct. Int'l Trade 2022) ("BGH I"); BGH

II, 639 F. Supp. 3d at 1237, and now recounts only those facts relevant to the court's review of the Remand Results. Commerce selected plaintiff BGH Edelstahl Siegen GmbH ("BGH") during its CVD investigation of fluid end blocks from the FRG between the period of January 1, 2018 to December 31, 2018. Resp't Selection Mem. at 1, C-428-848, PD 54, bar code 3938815-01 (Feb. 4, 2020). The investigation concluded that the Government of Germany offered countervailable subsidies through multiple programs, including the Konzessionsabgabenverordnung Program ("KAV Program").[1] Issues and Decision Mem. at 6–8, C-428-848, PD 293, bar code 4062827-01 (Dec. 7, 2020), ECF No. 15-2; see also Post-Prelim. Analysis [CVD] Investigation: [Fluid End Blocks] from [FRG] at 6–19, C-428-848, PD 271, bar code 4043279-01 (Oct. 21, 2020); Decision Mem. Prelim. Affirmative Determination [CVD] Investigation of [Fluid End Blocks] from [FRG] at 19–27, C-428-848, PD 220, bar code 3975458-01 (May 18, 2020). BGH filed its complaint and sought judgment on the agency record, challenging Commerce's final determination. Compl., Mar. 29, 2021, ECF No. 7; [BGH] Mot. J. Agency R., Oct. 26, 2021, ECF No. 21. The Court sustained in part and remanded in part Commerce's final determination after briefing. BGH I,

---

[1] BGH challenged Commerce's determination that the following programs are countervailable: 1. Stromsteuergesetz ("Electricity Tax Act"), 2. Energiesteuergesetz ("the Energy Tax Act"), 3. Erneuerbare-Energien-Gesetz ("EEG Program"), 4. Kraft-Wärme-Kopplungsgesetz ("KWKG Program"), 5. The European Union's ("EU") Emissions Trading System ("ETS Program"), 6. The EU ETS Compensation of Indirect $CO_2$ Costs Program ("$CO_2$ Compensation Program"), and 7. the KAV Program. [BGH] Rule 56.2 Mem. Supp. Mot. J. Agency R. at 7, 21, 30, 39–40, Oct. 26, 2021, ECF No. 22.

600 F. Supp. 3d at 1248. The Court held that Commerce's finding that the KAV Program was a specific countervailable subsidy as a matter of law was unsupported by the record because Commerce did not explain how the program limits usage to certain industries or enterprises and failed to consider its economic and horizontal properties and application. Id. at 1269. The Court also remanded Commerce's CVD rate calculation for the Electricity Tax Act and the Energy Tax Act. Id. at 1258.

Commerce filed Remand Results in January 2023. After briefing was complete, the Court sustained in part and remanded in part. BGH II, 639 F. Supp. 3d at 1239. Specifically, the Court again found that Commerce's classification of the KAV Program as de jure specific was insufficient in light of the record. Id. at 1243. The Court remanded for further explanation or reconsideration as to the economic and horizontal nature of the subsidy. Id. at 1244. The Court sustained Commerce's CVD rate calculation for both the Electricity Tax Act and the Energy Tax Act. Id. at 1242.

Commerce filed its Second Remand Results on August 7, 2023. In the second redetermination, Commerce continues to find the KAV Program to be a specific countervailable subsidy. Second Remand Results at 2. BGH opposes Commerce's redetermination, asserting that Commerce failed to support its findings that the KAV Program constitutes a specific subsidy in light of the second remand order, the plain wording of the statute, and legislative history. [BGH] Comments Opp. [Second Remand Results] at 1–12, Sept. 6, 2023, ECF No. 63 ("BGH Comments"). Defendant

and Defendant-Intervenors contend that the court should sustain Commerce's second remand redetermination because the KAV Program is specific as a matter of law due to its vertical eligibility criteria and access limitations to special contract customers. Second Remand Results at 2; Def.-Int.'s Reply on [Second Remand Results] at 2–6, July 19, 2023, ECF No. 62-4 ("Def-Int. Reply").

### JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 516A of the Tariff Act,[2] as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) (2018), and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an administrative review of a CVD order. "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quotation marks omitted).

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

## DISCUSSION

In its second remand redetermination, Commerce again argues that the KAV Program is specific as a matter of law.  Second Remand Results at 5.  Specifically, Commerce contends that the FRG has "limited" the KAV Program to a subset of enterprises and as a result the KAV Program is specific as a matter of law.  Second Remand Results at 5.  BGH argues that Commerce's explanation for its finding is insufficient to demonstrate specificity.  BGH Comments at 1–4, 9–11.  For the following reasons, the Court remands Commerce's second remand redetermination for further explanation or reconsideration.

A domestic subsidy may be countervailable either because it is specific as a matter of law (de jure specific) or specific as a matter of fact (de facto specific).  19 U.S.C. § 1677(5A)(D). Congress provided statutory guidelines[3] to identify when a subsidy is (i) specific as a matter of law (ii) not specific as a matter of law, and (iii) specific as a matter of fact.  Id.  The guidelines identify a de jure specific subsidy as one that "expressly limits access to the subsidy to an enterprise or industry."[4]  Id. § 1677(5A)(D)(i); see also Statement of Administration Action for the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994), as reprinted in 1994 U.S.C.C.A.N.

---

[3] 19 U.S.C. § 1677(5A)(D) provides: "In determining whether a subsidy (other than a subsidy described in subparagraph (B) or (C)) is a specific subsidy, in law or in fact, to an enterprise or industry within the jurisdiction of the authority providing the subsidy, the following guidelines shall apply:"

[4] An enterprise or industry may mean group of enterprises or industries.  19 U.S.C. § 1677 (5A)(D); SAA at 4242.

4040, 4242 ("SAA"). "Thus, a subsidy is de jure specific when the authority providing the subsidy, or its operating legislation, expressly limits access to the subsidy to a business or industry, or to a group of businesses or industries." Risen Energy Co. v. United States, No. 22-00231, 2023 WL 6620508, at *5 (Ct. Int'l Trade Oct. 11, 2023); See 19 U.S.C. § 1677(5A)(D)(i).

The second guideline makes clear that the existence of criteria—that limits access—alone is insufficient to render a subsidy specific as a matter of law if the criteria is horizontal in application and economic in nature. See 19 U.S.C. § 1677(5A)(D)(ii); SAA at 4243. If objective criteria are publicly and clearly set forth, and those criteria provide for automatic eligibility and are strictly followed, a subsidy awarded pursuant to those criteria is not specific as a matter of law. 19 U.S.C. § 1677(5A)(D)(ii). The SAA's explication of permissible criteria makes clear that criteria may create objective categories of industries or enterprises which may benefit from the subsidy to the exclusion of others. SAA at 4243. The SAA provides:

> Finally, the objective criteria or conditions must be neutral, must not favor certain enterprises or industries over others, and must be economic in nature and horizontal in application, such as the number of employees or the size of the enterprise.

Id. Criteria based on size or the number of employees could exclude entire categories of enterprises and industries, but such criteria would not render the subsidy de jure specific because it is horizontal (operating throughout the economy), and is economic in nature. Id.

Moreover, the SAA reveals that a subsidy will not be deemed de jure specific simply because it is available to fewer than all enterprises or industries. Id. at 4242. Indeed, the SAA elaborates that there is no "precise mathematical formula" for Commerce to invoke that can calculate when a number of enterprises or industries is "sufficiently small" to be specific as a matter of law.[5] Id. The SAA's rejection of a "precise mathematical formula" acknowledges that some limitations will result in a "sufficiently small" number of beneficiaries such that the subsidy will be considered specific as a matter of law. That the SAA provides that where the subsidy is available to a "sufficiently small" number of beneficiaries, the subsidy will be de jure specific, necessarily means that when criteria limit the number of beneficiaries to a group that is not "sufficiently small" it will not be de jure specific.[6] See id.

Here, the KAV Program identifies a category of enterprises or industries that are eligible for the subsidy based upon energy usage. The KAV Program is only available to the group of "special contract customers," meaning customers "whose measured power exceeds 30 kilowatts in at least two months of the billing year and whose annual consumption is more than 30,000 kilowatt hours (kWh)" and whose

---

[5] A proposal for a mathematical formula to determine de jure specificity was explicitly rejected by the United States, instead providing that such determinations must be made on a case-by-case basis. SAA at 4242–43.

[6] In its third guideline Congress delineates de facto specific subsidies, specifically providing that "[w]here there are reasons to believe that a subsidy may be specific as a matter of fact," Commerce will consider the actual number of recipients, whether there is a predominant or disproportionate user, and the manner in which the granting authority exercises discretion. 19 U.S.C. § 1677(5A)(D)(iii).

"electricity prices [] were lower than the Marginal Price agreed upon by the network operator and the municipality." Resp. [FRG] and the Fed. Ministry for Economic Affairs and Energy of the [FRG] to the Suppl. Questionnaire at 2–3, C-428-848, PD 270, bar code 4030747-01 (Sept. 22, 2020) ("FRG Response"); Second Remand Results at 4; see also BGH II, 639 F. Supp. 3d at 1244 at n. 6 (citing FRG Response at 2–3.). Although the KAV Program is limited[7] by its terms to special contract customers, Commerce fails to explain how this limitation renders the program de jure specific. In order to find the KAV Program specific as a matter of law, Commerce must conclude that the criteria imposed is not objective.

Commerce acknowledges that objective criteria are those that are economic in nature and horizontal in application.[8] Second Remand Results at 6. The SAA allows for some limitations, such as the size of an enterprise or number of employees, because those limitations are neutral, meaning they are economic in nature and horizontal in application, i.e., they cut across the economy. SAA at 4242. The KAV

---

[7] Commerce clarifies that it incorrectly indicated that the KAV Program "favored" certain enterprises in its First Remand Results and in the Second Remand Results now indicates that the KAV Program limits access to the program. Second Remand Results at 5.

[8] Commerce fails to address whether the KAV Program is economic in nature in the second redetermination, claiming it only needs to support its determination that the KAV Program is not horizontal in application in order to support its findings. See Second Remand Results at 11–12 (noting "the SAA requires both conditions (i.e., 'economic in nature and horizontal in application'") and declining to assess the former in light of its conclusion regarding the later). Commerce therefore has waived any argument that the KAV Program is not economic in nature.

Program is available to all customers that meet a specified energy consumption level.[9]

FRG Response at 2–3.   Nowhere does Commerce explain why energy usage is not

objective criteria in the same way the size of an enterprise or number of employees

would be.[10]   SAA at 4243.   Commerce simply concludes that because "these eligibility

criteria do not apply uniformly across all enterprises and industries (i.e., are not

horizontal in application), they cannot be neutral pursuant to [19 U.S.C.

§ 1677(5A)(D)(ii)]." Second Remand Results at 5–6, 11 (emphasis omitted).   However,

---

[9] That a limited number of enterprises or industries may ultimately benefit from the program may support a finding of de facto specificity, but it does not support a finding of express or de jure specificity.  See Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States, 523 F. Supp. 3d 1393, 1404 (Ct. Int'l Trade 2021).

Defendant-Intervenors assert Commerce could not have conducted a de facto analysis because the FRG could not supply the needed information for such an analysis.  Def-Int. Reply at 6–7.  However, nowhere in Final Decision Memo or subsequent remand determinations does Commerce indicate that it did not conduct such an analysis because the FRG did not supply needed information. See generally, Issues and Decision Mem., C-428-848, PD 293, bar code 4062827-01 (Dec. 7, 2020), ECF No. 15-2; BGH I, 600 F. Supp 3d 1241, BGH II, 639 F. Supp. 3d 1237.  Where Commerce lacks information, Congress has empowered it to resort to facts available. 19 U.S.C. § 1677e(a).  Commerce did so in this case for other programs.  Issues and Decision Mem. at 13–16, C-428-848, PD 293, bar code 4062827-01 (Dec. 7, 2020). Indeed, Commerce found in its post-preliminary determination that the KAV Program was specific as a matter of fact "because recipients of the subsidy are limited in number." Post Prelim. Analysis Mem. at 14, C-428-848, PD 271, bar code 4043279-01 (Oct. 21, 2020).  The FRG challenged Commerce's de facto specificity finding, see Brief from [FRG] to [Commerce] Pertaining to [FRG] at 20, C-428-848, PD 285, bar code 4048444-01 (Nov. 3, 2020), to which Commerce responded by changing to a de jure analysis of the KAV Program instead.  Issues and Decision Mem. at 39, C-428-848, PD 293, bar code 4062827-01 (Dec. 7, 2020).

[10] Commerce's arguments that a group of enterprises or industries does not need to be "specifically named" and Commerce is not required to identify "shared characteristics among the enterprises or industries" are irrelevant.  See Second Remand at 7.  The issue Commerce must, but fails, to address is whether criteria is horizontal—that is, whether it is available across enterprises or industries.

that the program contains limiting criteria does not in itself render it de jure specific. See 19 U.S.C. § 1677(5A)(D)(ii). The SAA rejects the notion of a mathematical formula when determining specificity as a matter of law, meaning that certain criteria may limit potential beneficiaries to some number without the subsidy being de jure specific. SAA at 4242. Indeed, in its Second Remand Results, Commerce makes the point that preeminent purpose of the specificity test is "to 'function as a rule of reason and avoid imposition of [CVDs] in situations where, because of the widespread availability and use of a subsidy, the benefit of the subsidy is spread throughout an economy.'" Second Remand Result at 7–8 (quoting SAA at 4242) (emphasis omitted).

Nonetheless, Commerce reasons here, as it has in prior determinations,[11] that where the "implementing legislation expressly limited access to the 'group' that the legislation itself created" the subsidy is de jure specific. Id. at 11 ("Indeed, where an

---

[11] Commerce references past decisions: Certain Softwood Lumber Products from Canada, 2020; Certain Softwood Lumber Products from Canada, 2017–18; Certain Hot-Rolled Steel Flat Products from the Republic of Korea, 2020; and Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, from the People's Republic of China, 2019 in which it pronounces the same rule that a program is "de jure specific pursuant to section 771(5A)(D)(i) of the Act despite the fact that the authority or implementing legislation did not limit the program to specifically named enterprises or industries." Second Remand Results at 10; 87 FR 48455 (Aug. 9, 2022), and accompanying IDM at Comment 103; 85 FR 77163 (Dec. 1, 2020), and accompanying IDM at Comment 65; 88 FR 29889 (May 9, 2023), and accompanying IDM at Comment 3; 87 FR 40491 (July 7, 2022), and accompanying IDM at Comment 20. See also Second Remand Results at 7–10. However, these decisions also fail to explain how objective criteria creates an express limitation in light of 19 U.S.C. § 1677(5A)(D)(ii).

authority, by law, limits eligibility to a group of enterprises or industries . . . it cannot do so uniformly. . . .by expressly limiting eligibility to certain groups that the authority, itself, defines, the authority has, in effect, established criteria that are vertical in nature") (emphasis omitted). Commerce's example of a permissible program which only requires firms to strive to improve energy efficiency for eligibility, implies that all industries must be capable of taking advantage of a program for the program to be horizontal in application. See id. at 11 ("Indeed, where an authority, by law, limits eligibility to a group of enterprises or industries (e.g., those that operate specific types of 'stationary equipment'), it cannot do so uniformly") (emphasis omitted). This implication runs counter to the example provided in the SAA indicating that a category based upon the size or number of employees would be horizontal. SAA at 4243. The implication also runs counter to the SAA's rejection of a precise mathematical formula in determining de jure specificity. Id. at 4242–43.

Commerce's position where "implementing legislation expressly limit[s] access to the 'group' that the legislation itself created" the subsidy is de jure specific, see Second Remand Results at 11, is contrary to law. The statute allows a subsidy to be limited to fewer than all enterprises or industries in an economy, so long as that criteria creating that legislation is objective. SAA at 4242 (noting that the purpose of the specificity functions to allow subsidies which "truly are broadly available and widely used throughout an economy"). The Court remands to Commerce for further consideration or explanation. Commerce can either explain and support its

determination that the criteria are not neutral, (i.e., are not economic in nature and horizontal in application) or conduct a de facto analysis or reconsider its determination. Commerce cannot rely upon its determination by "expressly limiting eligibility to certain groups that the authority, itself, defines, the authority has, in effect, established criteria that are vertical in nature" as that determination is contrary to law. See Remand Results at 11.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Commerce's Second Remand Results are remanded for further explanation or reconsideration consistent with this opinion with respect to its determination that the KAV Program is a specific subsidy; and it is further

**ORDERED** that Commerce shall file its third remand redetermination with the court within 90 days of this date; and it is further

**ORDERED** that the parties shall file any comments on the third remand redetermination within 30 days of the date of filing of the third remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the third remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix within 14 days of the date of filing of responses to the comments on the third remand redetermination; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing of its third remand redetermination.

                                                    /s/ Claire R. Kelly
                                                    Claire R. Kelly, Judge

Dated:          November 14, 2023
                New York, New York